UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-187-KSF

WILLIAM SANFORD                                                    PLAINTIFF

v.                              **OPINION & ORDER**

MAIN STREET BAPTIST CHURCH
MANOR, INC. and SOUTHEASTERN
MANAGEMENT CENTER, INC.                                         DEFENDANTS

* * * * * * * * * * *

This matter is before the Court upon the motion of the defendants, Main Street Baptist Church Manor, Inc. and Southeastern Management Center, Inc., to dismiss. [DE #16] Also pending before this court is the motion of the plaintiff, William Sanford, for a ruling that Southeastern is a "joint employer" with the Manor. [DE #26] These matters have been fully briefed and are ripe for review.

## I.     INTRODUCTION

This lawsuit arises from the alleged sexual harassment of the plaintiff, William Sanford, by his supervisor, Marla Carter, while he was employed by Main Street Baptist Church Manor, Inc. ("the Manor"). As a result of this alleged harassment, Sanford sued the Manor and Southeastern Management Center, Inc. ("Southeastern") for sexual harassment and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Sanford also asserts state law claims against these defendants for unlawful employment practices under KRS 344.040.

The defendants have filed their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure contending that the Manor cannot satisfy Title VII's employee-numerosity

requirement found in 42 U.S.C. § 2000e(b).  According to § 2000e(b), to fall within the purview of the statute, an employer must be a person [the definition of which includes corporations and associations] engaged in an industry affecting commerce, who has fifteen or more employees on each working day in each of twenty or more calendar weeks, in the current or preceding calendar year. 42 U.S.C. § 2000e(b).  There is apparently no dispute that the Manor did not, at any relevant time, have the requisite number of employees to satisfy § 2000e(b).  However, Sanford responds that the Manor and Main Street Baptist Church are so interrelated that they constitute a "single employer" for purposes of the Title VII employee-numerosity requirement.

Sanford has also filed a motion for a ruling that Southeastern is a "joint employer" with the Manor for purposes of satisfying the employee-numerosity requirement of Title VII.  Southeastern denies that it ever employed Sanford, and argues that Sanford should be judicially estopped from claiming that Southeastern was his employer after taking the opposite position in his unemployment benefits case.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS AND SUMMARY JUDGMENT

It is well settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."  *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1991).  However, because the defendants' motion to dismiss and Sanford's motion for a ruling were filed long after discovery had commenced and both parties rely on materials outside the pleadings to support their positions, the Court may consider these motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(6).

2

Under Rule 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." In essence, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984). The court, however, must not judge the evidence or make findings of fact. *60 Ivy Street Corporation v. Alexander*, 822 F.2d 1432, 1436 (6th Cir. 1987). The moving party bears the burden of demonstrating the absence of all genuine issues of material fact, and this burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325. Once the moving party discharges the burden, it then shifts to the nonmoving party to present specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e).

## III.    ANALYSIS

It is undisputed that the Manor alone does not satisfy the employee-numerosity requirement of Title VII. Sanford, however, attempts to overcome this hurdle by relying on two doctrines fashioned by the courts whereby a defendant that does not directly employ a plaintiff may still be considered an employer for employment discrimination purposes. First, Sanford contends that the Manor and Main Street Baptist Church are so interrelated as to constitute a "single employer" with a sufficient number of employees to satisfy Title VII's employee-numerosity requirement. Second,

3

Sanford argues that Southeastern maintains sufficient control over the Manor's employees such that it is a "joint employer" for purposes of Title VII.  Because the Manor and Southeastern are both named defendants, the court will first address Sanford's contention that they are "joint employers" for purposes of Title VII.

### A.    THE "JOINT EMPLOYER" DOCTRINE

For Sanford to hold Southeastern liable for any of the employment discrimination claims alleged against it, Sanford must show that Southeastern was his employer.  The Manor has admitted that it employed Sanford, but Southeastern denies that it ever maintained an employment relationship with Sanford.  Sanford, however, argues that under the "joint employer" doctrine, both Southeastern and the Manor are his employers, and the employee-numerosity requirement of Title VII is satisfied.[1]

Title VII itself does not provide any guidance with respect to the common law doctrine of "joint employer," thus, the Court must look to common law concepts to determine whether Southeastern falls within the coverage of Title VII. Over the years, the Sixth Circuit has interchangeably used the "single employer" and "joint employer" doctrines.  *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997)  However, in *Swallows,* the Sixth Circuit recognized that these concepts are analytically distinct:

> While the single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise, the joint employer analysis has been described as follows:
>
> > The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and

---

[1]The defendants do not dispute that if Southeastern is found to be a "joint employer," the employee-numerosity requirement of Title VII is met.

4

conditions of employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment.

*Id.* at 993 n.4 (quoting *NLRB v. Browning-Ferris Ind. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122-23 (3rd Cir. 1982) (citations omitted)). Because the plaintiffs in *Swallows* did not raise the joint employer doctrine, the panel did not outline any factors that courts should use in evaluating joint employer claims, and no panel of the Sixth Circuit since *Swallows* has addressed the joint employer doctrine. Accordingly, this court will look beyond the Sixth Circuit for guidance.

Numerous circuits have compiled factors that courts should consider when determining whether two or more entities are joint employers.[2] In considering the joint employment doctrine, this court has previously relied on *W.W. Grainger, Inc. V. NLRB*, 860 F.2d 244, 247 (7th Cir. 1988), which outlines the following factors: (1) the supervision of the employee's day-to-day activities; (2) the authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) work assignments; and (5) issuance of operating instructions. *See Pfeifer v. Witt*, Lexington Civil Action No. 98-504-KSF. Insasmuch as these factors accurately encapsulate the joint employer concept as discussed in *Swallows*, the Court will use these factors in determining whether

---

[2]*See e.g., Rivera-Vega v. Con Agra, Inc.*, 70 F.3d 153, 163 (1st Cir. 1995) (summarizing several circuits' factors: supervision of the employee's day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits, and overtime; and authority over the number of employees); *Clinton's Ditch Coop Co., Inc. v. NLRB*, 778 F.2d 132, 138-39 (2nd Cir. 1985) (emphasizing five factors: (1) hiring and firing; (2) discipline; (3) pay, insurance and records; (4) supervision; and (5) participation in the collective bargaining process); *Browning-Ferris*, 691 F.2d at 1124-25 (concluding that the following evidentiary elements supported a joint employer finding: (1) right to hire and fire; (2) work hours; (3) work conditions and records; (4) compensation; and (5) supervision).

5

the Manor and Southeastern are joint employers.

**B.    THE MANOR AND SOUTHEASTERN ARE "JOINT EMPLOYERS"**

Southeastern is a management company that provides consulting services to retirement/Section 8 housing complexes in the Central Kentucky area. In 1985, the Manor entered into a Management Agreement with Southeastern whereby Southeastern agreed to provide management services to the Manor. A review of the Management Agreement executed by the defendants, and the Management Plan implemented pursuant to the Management Agreement, clearly reveals that the defendants jointly determine those matters relating to personnel. The Management Agreement, executed January 21, 1985, appoints Southeastern as the "exclusive agent for the management of the property. . . ." Section 15 of the Management Agreement governs "Employees" and provides:

> The Management Plan prescribes the number, qualifications and duties of the personnel to be regularly employed in the management of the Project, including a Resident Manager, and maintenance, bookkeeping, clerical, and other managerial employees. All such personnel will be employees for the Agent [Southeastern] and not the Owner, and will be hired, paid, supervised and discharged by the Agent, subject to the following conditions:
> . . .
> (d) Compensation for all on-site employees will be established by the agent [Southeastern] conforming with the approved annual budget and minimum wage standards, and will be treated as Project expenses.
> (e) Fringe benefits for all on-site employees, such as Social Security taxes, unemployment insurance, workmens' compensation insurance, health insurance and vacation pay incident to the employment of personnel shall be recommended by the Agent [Southeastern], conforming with the approved annual budget and treated as a Project expense. . . .

Section 1 of the Management Plan, implemented pursuant to the Management Agreement, governs the relationship between Southeastern and the Manor, and provides:

> The managing agent [Southeastern] shall prepare an operating schedule, set job

6

> standards and wage rates previously approved by the Owner/Sponsor [the Manor], investigate, hire, pay, supervise and discharge the personnel necessary to be employed in order to properly maintain and operate the project. . . The agent [Southeastern] shall hire in its own name, all personnel necessary for the efficient discharge of the duties of the agent hereunder, including the Resident Manager who shall be under the direct supervision of the agent [Southeastern].

Furthermore, subsection F of the Management Plan provides that "[d]ay to day decisions concerning the hiring of personnel and the general operations and maintenance of the project shall be carried out solely by the agent [Southeastern]."

Section 2 of the Management Plan governs personnel policy. It provides in subsection C that "[t]he staffing pattern will conform to the annual budget in expense, and provide for the required coverage of business offices and security functions for the facility." According to subsection D(3), "[e]mployment, termination of employment, and promotion of all personnel are the direct responsibility of the Area Manager, using guidelines, including the policy of promotion from within, provided by the Management Agent. All such actions shall have specific approval of the agent [Southeastern]."

Based on the clear terms of the Management Agreement and the Management Plan, it is apparent that Southeastern maintained significant control over the individuals working at the Manor. Southeastern had the authority to supervise the employee's day-to-day activities, the authority to hire or fire employees, and the duty to prescribe the number, qualifications and duties of the employees. Although Southeastern relies on testimony that the Manor and its board of directors had the final authority as to the terms and conditions of Sanford's employment and that Southeastern had no authority to hire or terminate Sanford, the Management Agreement contains a merger clause, which states:

> This Agreement constitutes the entire agreement between the Owner [the Manor] and
> the Agent [Southeastern] with respect to the management and operation of the
> Project, and no change will be valid, unless made by supplemental written agreement,
> executed and approved by the Consenting Parties as well as the Principal Parties.

Management Agreement, Section 29(b).  Based on the merger clause in the written contract, this court will not consider parol evidence in this case inasmuch as there has been no allegation of fraud which would invalidate the merger clause, nor is the agreement so obviously incomplete on its face so as to justify the admission of parol evidence.

The Manor has admitted that it employed Sanford, and that Sanford was paid out of the Manor's funds.  However, pursuant to the Management Agreement and Management Plan, Southeastern exercised, or had the authority to exercise, sufficient control over the Manor's employees to be considered a joint employer for purposes of Title VII.

## C.   SANFORD IS NOT JUDICIALLY ESTOPPED FROM CLAIMING THAT SOUTHEASTERN IS HIS EMPLOYER

Southeastern argues that Sanford should be judicially estopped from asserting a claim that Southeastern is his employer based on the fact that when he applied for unemployment benefits, he declared that his employer was the Manor.  Southeastern contends that Sanford's position in the unemployment compensation matter is inconsistent with his argument now that Southeastern was his employer.

The purpose of the doctrine of judicial estoppel is "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (citations omitted).  In other words, courts apply the doctrine to judicial estoppel to prevent a party from taking a position in a proceeding that is clearly at odds with a position taken in a prior proceeding. *Id*. at 749.  The

following factors are to be considered by courts in determining whether or not to exercise judicial estoppel: (1) whether the party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept its earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that one court was misled; and (3) whether the party asserting the inconsistent position would obtain an unfair advantage or the opposing party would suffer an unfair detriment if not estopped. *Id*. at 750-51.

Applying these factors to the facts of this case, the Court declines to apply judicial estoppel here. First, Sanford's position that the Manor was his employer in the unemployment compensation matter is not "clearly inconsistent" with his position now that Southeastern and Manor are "joint employers." The "joint employer" doctrine clearly contemplates the possibility of two liable employers. Moreover, the unemployment compensation process is completely unrelated to an employer's liability under civil rights laws.

Second, although Sanford was denied unemployment compensation, this finding was not based on a decision that the Manor was found to be his only employer, or that Southeastern was not a joint employer, but rather because he "voluntarily quit without good cause attributable to employment." Thus, there is no danger of this Court being forced to repudiate any finding arising in Sanford's unemployment compensation matter.

Finally, no unfair advantage or unfair detriment resulted as a result of Sanford's decision to proceed only against the Manor in his unemployment benefits action. The defendants' argument that Southeastern will suffer an unfair detriment by having to defend this action now, despite not being named an employer in the unemployment compensation matter, is senseless. Southeastern can point to no requirement that Sanford name all potential employers when filing for unemployment

9

compensation benefits, and any detriment suffered by Southeastern is simply a result of the fact that Southeastern has been found to be a joint employer for purposes of Title VII.   To the extent that the defendants argue that the Manor has suffered an unfair detriment, again the defendants point to no authority requiring Sanford to proceed against all potential Title VII employers in an unemployment compensation matter.   Sanford simply has not obtained any unfair advantage, nor have the defendants suffered any unfair detriment, as a result of his position in the unemployment compensation matter.

     **D.**     **THE DEFENDANTS' MOTION TO DISMISS**

Because the Manor and Southeastern are joint employers for purposes of Title VII, the employee-numerosity requirement of Title VII has been satisfied and the Court need not decide whether the Manor and Main Street Baptist Church are a "single employer."   Accordingly, the defendants' motion to dismiss will be denied as moot.

**IV.**     **CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, HEREBY ORDERS:

(1)     the defendants' motion to dismiss [DE #16] is DENIED AS MOOT; and

(2)     Sanford's motion for a ruling that Southeastern is a joint employer [DE #26] is GRANTED, and Southeastern is deemed a "joint employer" for purposes of Title VII.

This the 30th day of May, 2007.



**Signed By:**

**_Karl S. Forester_** $\mathcal{KSF}$

**United States Senior Judge**

10