UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-187-KSF

WILLIAM SANFORD                                                                                    PLAINTIFF

v.                                            **OPINION & ORDER**

MAIN STREET BAPTIST CHURCH
MANOR, INC. and SOUTHEASTERN
MANAGEMENT CENTER, INC.                                                                   DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter has been remanded to this Court by the United States Court of Appeals for the Sixth Circuit for a redetermination of whether, based on the joint employer or single employer doctrine, the plaintiff has established that his employer has at least fifteen employees to meet the employee-numerosity requirement of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and at least eight employees to meet the employee-numerosity requirement of the Kentucky Civil Rights Act, KRS 344.040 (the "Kentucky Act"). For the reasons set forth below, the Court finds that the plaintiff has failed to satisfy the employee-numerosity requirement under federal or state law.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, William Sanford, filed this civil rights action against the defendants, Main Street Baptist Church Manor, Inc (the "Manor") and Southeastern Management Center, Inc. ("Southeastern"), asserting claims of hostile environment sexual harassment, quid pro quo sexual harassment, and retaliation pursuant to Title VII and the Act. The Manor is a nonprofit organization

1

that operates a 64-unit apartment building in Lexington, Kentucky and receives financial assistance from the Department of Housing and Urban Development ("HUD") such that it is designated as a Section 8 housing facility [DE #20].  The record reveals that during the 2003 and 2004 calendar year, the Manor employed no more than six employees for twenty weeks or more, and that during the 2005 calendar year, the Manor employed no more than four employees for twenty weeks or more [DE ##17-3, 23-2] .  The Manor's Board of Directors consists of eleven, unpaid volunteers with paid occupations separate from their volunteer duties on the Manor Board [DE #20].

Sanford alleges he became employed by the Manor as a part-time summer maintenance worker sometime in 1999.  The next year he assumed a full-time maintenance worker position and also provided courtesy (or security) services.  Sanford contends that he was sexually harassed by his supervisor, Marla Carter ("Carter"), who was also a Manor employee, from 2000 until he quit in March 2005.

Southeastern is a property management company that had been hired to assist the Manor's Board of Directors with the operation of the Manor, including day-to-day operations and assuring compliance with HUD regulations [DE #21].  The agreement between the Manor and Southeastern is governed by a Management Plan.  According to this Management Plan, Southeastern is the "exclusive agent for the management of the property" and determines the "number, qualifications, and duties of the personnel to be regularly employed in the management of the project, including a Resident Manager and maintenance, bookkeeping, clerical, and other managerial employees." Southeastern's duties with respect to the Manor also include: (1) assumption of "prime responsibility for all facets of operation"; (2) providing accounting services; (3) hiring, paying, and supervising employees; (4) advertising and helping ensure that vacant apartments are filled; and (5) ensuring

2

compliance with HUD regulations [DE #26-5].

The Manor moved to dismiss Sanford's complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that it did not employ a sufficient number of employees to satisfy either the fifteen-employee numerosity requirement for Title VII or the eight-employee numerosity requirement for the Kentucky Act [DE #16]. In response, Sanford argued that the Manor and Main Street Baptist Church (the "Church"), not a party to this action, are so interrelated as to constitute a "single employer" with a sufficient number of employees to satisfy the numerosity requirements. Additionally, Sanford argued that Southeastern maintains sufficient control over the Manor's employees such that it is a "joint employer" for purposes of Title VII, and moved for a ruling to that effect [DE ##22, 26]. The defendants then filed their motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, arguing that Sanford's claims of hostile environment sexual harassment, quid pro quo sexual harassment and retaliation fail as a matter of law. Southeastern also argued that it cannot be held liable for Sanford's claims because it was not Sanford's employer.

Concluding that the Manor and Southeastern were joint employers, and without addressing the single employer doctrine, this Court held that the employee-numerosity requirements were satisfied [DE #36]. The Court then granted summary judgment in favor of the defendants on Sanford's sexual harassment and retaliation claims [DE #39].

Sanford appealed this Court's entry of summary judgment in favor of the defendants [DE #41]. The Manor filed its cross-appeal, arguing that it does not have sufficient employees to fulfill the employee-numerosity requirement under federal or state law [DE #42]. On appeal, the Sixth Circuit reversed, holding that this Court incorrectly applied the joint employer doctrine to conclude

that the Manor had the requisite number of employees to be liable under Title VII and the Kentucky Act, and remanded for a redetermination of this issue. The Sixth Circuit further reversed this Court's order granting summary judgment on Sanford's hostile environment sexual harassment and retaliation claims, but affirmed the order granting summary judgment to the Manor and Southeastern on the quid pro quo sexual harassment claim [DE #44].

On remand, this Court ordered the parties to file contemporaneous briefs on the issue of whether the joint employer doctrine applies to subject the defendants to liability under Title VII and the Kentucky Act [DE #46]. The parties having filed their briefs [DE # 50, 51], this matter is now ripe for review.

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Although the issue of whether the Manor has the requisite number of employees to satisfy the employee-numerosity requirements under Title VII and the Kentucky Act was presented in a motion to dismiss, because the Court will consider items outside the pleadings this matter will be treated as a motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(d). Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this case, the parties dispute whether the Manor and Southeastern are subject to Title VII as employers having "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year. . . ." 42 U.S.C. § 2000e(b) and/or subject to the Kentucky Act as employers "who h[ave] eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year. . . ," KRS. 344.030(2).

The employee-numerosity requirement is an element of Sanford's claims, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006), and Sanford has the burden of proof at trial. At the summary judgment stage, the defendants' burden is to point out, with or without supporting affidavits, that there is an absence of evidence to support Sanford's case. *Celotex v. Cattret*, 477 U.S. 317, 324-25 (1986). To avoid summary judgment, Sanford must go beyond the pleadings and designate specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e). Sanford's evidence must be sufficiently probative to permit a reasonable trier of fact to find in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Merely discrediting the defendant's evidence is insufficient to avert summary judgment. *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 331 (1999).

Sanford claims that the harassment by Carter began in 2004 and continued until his resignation in March 2005. There is apparently no dispute that the Manor did not employ the requisite number of employees to satisfy the employee-numerosity requirements in 2004 or 2005, and the Manor has submitted affidavits and summary exhibits demonstrating that the employee numerosity requirement is unmet [DE ##17-3, 23-2]. Sanford, however, argues that the Manor has failed to come forward with any evidence relating to the number of employees it had in 2003. Under 42 U.S.C. § 2000e(b) and KRS 344.030(2), the number of employees the Manor had in 2003, the "preceding calendar year," is relevant for employee-numerosity purposes. The record, however, reveals that the Manor has submitted the affidavit of Wayne Cornelius, a member of the Manor's Board and President of the Manor, indicating that "[i]n the calendar year 2003, the Manor only had six employees who were employed for 20 weeks or more." [DE #23-2]. If Sanford is to survive the defendants' motion, he must establish that some form of employee aggregation is appropriate.

Sanford attempts to overcome the employee-numerosity requirement by relying on both the "single employer doctrine" and the "joint employer doctrine" to hold the Manor and Southeastern liable under Title VII and the Kentucky Act.

### B.    THE JOINT EMPLOYER DOCTRINE

Sanford first relies on the joint employer doctrine in an attempt to satisfy the employee-numerosity requirement and to hold Southeastern liable as an employer. In remanding this case to this Court, the Sixth Circuit clearly defined the analysis this Court must make in determining whether the Manor and Southeastern were joint employers for purposes of the employee-numerosity requirement. The Sixth Circuit explained that the issue of whether and how different employees of joint employers may be aggregated for purposes of satisfying the numerosity requirement is an issue of first impression in the Sixth Circuit. The Sixth Circuit then adopted the Second Circuit's approach in *Arculeo v. On-Site Sales & Mktg. L.L.C.*, 425 F.3d 193, 198 (2nd Cir. 2005).

In *Arculeo*, the Second Circuit defined the "joint employer" doctrine as follows:

> A conclusion that employers are joint assumes that they are separate legal entities, but that they . . . handle certain aspects of their employer-employee relationship jointly. Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.

*Id.* at 198(quotations and citations omitted). With respect to aggregation for the employee-numerosity requirement, the *Arculeo* court noted that under the single employer doctrine all of the employees of the single employer entities are aggregated for numerosity purposes, while the joint employer doctrine aggregates employees differently. Specifically, the *Arculeo* court explained:

> [W]hen the circumstances of one employee's employment justify the conclusion that

6

>she is being employed jointly by two distinct employers, it does not follow that all of the employees of both employers are part of an integrated entity encompassing both.  A joint undertaking by two entities with respect to employment may furnish justification for adding to the employees of one employer those employees of another who are jointly employed by the first, but such joint undertaking does not furnish logical justification for adding together *all* the employees of both employers, unless the circumstances justify the conclusion that all the employees of one are jointly employed by the other.

*Idi* at 199.

When aggregating employees under the joint employer doctrine, the Sixth Circuit approved of the following test enunciated in *United States EEOC v. Custom Companies*, 2007 WL 734395 (N.D. Ill. March 8, 2007):

>(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.

*Id* at *7 (citing *Piano v. SBC/Ameritech*, 2003 WL 260337 *5  (N.D. Ill. Feb. 3, 2003)).  The Sixth Circuit, again relying on *Arculeo*, also noted the following similar factors relevant to aggregation in the joint employer context in NLRB cases: exercise of authority to hire, fire, and discipline, control over pay and insurance, and supervision.  *Arculeo*, 425 F.3d at 202.

Applying this analysis to the present case, the Sixth Circuit held that this Court "failed to conduct the necessary aggregation analysis set forth in *Arculeo* and the EEOC Compliance Manual, i.e., it did not "count the number of individuals employed by [the Manor] alone *and* the employees jointly employed by [the Manor] and [Southeastern]" in determining whether the Manor had the requisite number of employees." [DE #44, p.11].  Accordingly, the Sixth Circuit ordered that, on remand, this court consider, with respect to every Southeastern employee working at the Manor,

7

whether: (1) the Manor had the authority to hire, fire, and discipline the Southeastern employee; (2) the Manor could affect the Southeastern employee's compensation or employment benefits; and (3) the degree to which the Manor's management supervised the Southeastern employee, including directing the employee's schedule and daily assignments, and any other pertinent factors.

Sanford first contends that Jean Peyton, Southeastern's Director of Retirement Housing, should be considered a joint employee of the Manor and Southeastern because her decisions are subject to approval and/or direction by the Manor's Board of Directors. Peyton has testified that as Director of Retirement Housing for Southeastern, she provides services to several separate retirement/Section 8 housing complexes in the Central Kentucky area [DE #21]. However, Sanford has come forward with no evidence that the Manor had the authority to hire, fire, or discipline Peyton. Nor is there any evidence that the Manor could affect her compensation or employment benefits. While Sanford argues that the Manor's Board of Directors controlled or directed Peyton's work at the Manor, there is simply no evidence that the Manor directed her schedule or daily assignments. Instead, the evidence reveals that Peyton receives a salary and benefits from Southeastern and does not receive any form of compensation from the Manor. The amount and frequency of her raises are determined by her supervisor, Greg Chase, General Manager of Southeastern, and his superiors. Peyton's sole office is located at Southeastern, and she does not have an office at the Manor [DE #21]. Thus, Sanford is unable to point to any evidence that Peyton was a "joint employee" under the standards set by the Sixth Circuit.

Next, Sanford argues that certain maintenance, clerical, and bookkeeping employees of Southeastern should be considered joint employees of the Manor. While the evidence reveals that certain Southeastern employees performed work at or for the Manor pursuant to the Management

Plan, Sanford again has failed to come forward with any specific facts showing that the Manor exercised any employment authority over these employees. Finally, Sanford argues that Greg Chase, the General Manager of Southeastern, should be counted as a joint employee simply because he was often on-site and attended meetings of the Manor's Board of Directors. Certainly, this is not enough to establish that the Manor was Greg Chase's joint employer.

The record clearly reveals that the essential terms and conditions of employment of the Manor's employee's were governed by the Manor's Board. On the other hand, the essential terms and conditions of employment of Southeastern's employees were governed solely by Southeastern. Accordingly, based on the Second Circuit's analysis in *Arculeo*, approved by the Sixth Circuit, this Court finds that Sanford has failed to come forward with sufficient probative evidence to permit a reasonable trier of fact to find that the Manor and Southeastern were joint employers of any employees. Therefore, Sanford cannot rely on the joint employer doctrine to satisfy the employee-numerosity requirement of Title VII or the Kentucky Act.

There is no dispute that both Sanford and his alleged harasser, Marla Carter, were both employed by the Manor. Because Sanford has failed to come forward with sufficient evidence that Southeastern was a joint employer, Southeastern cannot be liable under Title VII or the Kentucky Act for Sanford's claims. Accordingly, the Court will grant Southeastern's motion for summary judgment.

### 2. SINGLE EMPLOYER DOCTRINE

The Court now turns to Sanford's argument that the Manor and Main Street Baptist Church (the "Church") should be considered a single employer. In support of its argument based on the single employer doctrine, the Manor contends that it is part of an integrated enterprise with the

Church, such that the Court must include the Church employees for purposes of the employee-numerosity requirement. The single employer doctrine finds its origins in a series of National Labor Relations Board cases extending the reach of the National Labor Relations Act. *See Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 582 (7th Cir. 1993)(and cases cited therein). "The doctrine has been applied in Title VII employment discrimination cases, often as a back-door means of satisfying the statute's numerosity requirement." *Field v. Corporate Office Systems, Inc.*, 1995 WL 399540 (N.D. Ill. July 6, 1995).

> According to the Sixth Circuit:
>
> In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations; i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control. None of these factors is conclusive, and all four need not be met in every case. Nevertheless, control over labor relations is a central concern.

*Swallows v. Barnes and Noble Book Stores, Inc.*, 128 F.3d 990, 993-94 (6th Cir. 1997). The burden is on Sanford to present facts that satisfy the four-part "single employer" test. *See Lockhard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998).

As the Manor points out, there is no evidence that the operation of the Manor and the Church are interrelated. The Manor maintains its own offices, records, bank accounts and equipment at the Manor, which is physically separate from the Church [DE ## 20, 23-3]. The day-to-day operations of the Manor are not run by the Church, but by Southeastern pursuant to the Management Plan. [DE #26-2]. Southeastern does not contract with, or answer to, the Church for the services it provides to the Manor. Nor does Southeastern provide any services to the Church.

Moreover, there is no centralized control of labor relations between the Manor and the

Church. The Church is governed by a majority vote of its entire membership on all Church matters, including personnel issues, while the Manor is governed by a Board of Directors consisting of eleven unpaid volunteers. Although the Bylaws of the Manor dictate that the pastor of the Church also serve as Chairman of the Manor's Board, his position represents only one out of eleven votes on the Board. The remaining ten board members are volunteers. These board members have occupations separate and apart from their volunteer obligations to the Manor. Despite the fact that all the board members attend the Church, there is no evidence that the Manor's board members are required to consult with or seek approval of the Church when making operational decisions affecting the Manor. Importantly, there is no evidence that the Church has any authority to terminate or affect the employment of the Manor's employees [DE #20].

Finally, there is no evidence of common ownership or financial control between the Church and the Manor. The assets of the Manor are owned by the individual "members" of the Manor Board- the Church has no "ownership" stake in the Manor. The Manor's Board, without input or approval of the Church, approves an annual budget for the Manor, and Southeastern provides management assistance in daily operations and HUD compliance. The Manor's revenues are not from the Church, but result from rent receipts and government subsidies [DE #23].

Weighing the factors set out in *Swallows*, the Court concludes that Sanford has failed to come forward with sufficient evidence which would allow a reasonable juror to conclude that the Manor and the Church are a single employer. While there is indeed overlap between the Manor and the Church due to the fact that the Manor's Board of Directors consists solely of Church members, this fact alone cannot overcome the lack of evidence with respect to interrelation of operations, centralized control of labor relations, or common financial control. Accordingly, the Manor's

motion to dismiss, construed as a motion for summary judgment, will be granted.

      **D.    RETALIATION UNDER THE KENTUCKY CIVIL RIGHTS ACT**

Sanford contends that even if the employee-numerosity requirement is not met, he should be allowed to proceed on his state-law claim for retaliation because there is no employee-numerosity requirement under the Kentucky Act for retaliation claims. However, a review of Sanford's complaint reveals that he did not plead retaliation under the Kentucky Act, but only under Title VII [DE #1]. By failing to amend his complaint within the time allowed under the Court's Scheduling Order, Sanford has waived this claim.

**III.    CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)     Southeastern's motion for summary judgment [DE #27] is **GRANTED**, and judgment will be entered in favor of Southeastern;

(2)     the Manor's motion to dismiss/motion for summary judgment [DE #16] is **GRANTED**, and judgment will be entered in favor of the Manor;

(3)     Sanford's claims based on Title VII and the Kentucky Civil Rights Act are **DISMISSED WITH PREJUDICE**;

(4)     this matter is **DISMISSED** and **STRICKEN** from the active docket; and

(5)     a judgment consistent with this Opinion & Order will be entered contemporaneously herewith.

This November 20, 2009.



**Signed By:**

*Karl S. Forester* KSF

**United States Senior Judge**